Floyd W. Bybee, #012651
**Law Office of Floyd W. Bybee, PLLC**
4445 E. Holmes Ave., Suite 107
Mesa, AZ 85206-5530
Office:  (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **Yolanda M. Rosales,** an individual; | ) | No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| **Cavalry Investments, LLC;** and | ) | |
| **Casebolt, Germaine & Schenk, PLC**; | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | (Jury Trial Demanded) |

Plaintiff alleges as follows:

### I.  Preliminary Statement

1.     Plaintiff brings this action for damages based upon Defendants' violations of the
Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*. (hereinafter
"FDCPA").  In the course of attempting to collect a debt allegedly owed by
Plaintiff, Defendants engaged in deceptive, unfair and abusive debt collection
practices in violation of the FDCPA.  Plaintiff seeks to recover actual damages,
and statutory damages, as well as reasonable attorney's fees and costs.

### II.  Statutory Structure of FDCPA

2.     Congress passed the FDCPA to eliminate abusive debt collection practices by

1   debt collectors, to insure that those debt collectors who refrain from using abusive

2   debt collection practices are not competitively disadvantaged, and to promote

3   consistent state action to protect consumers against debt collection abuses.

4   FDCPA § 1692.

5   3.   The FDCPA is designed to protect consumers who have been victimized by

6   unscrupulous debt collectors regardless of whether a valid debt exists.  Baker v.

7   G.C. Services Corp., 677 F.2d 775, 777 (9th Cir. 1982).

8   4.   The FDCPA defines a "consumer" as any natural person obligated or allegedly

9   obligated to pay any debt.  FDCPA § 1692a(3).

10  5.   The FDCPA defines "debt" as any obligation or alleged obligation of a consumer

11  to pay money arising out of a transaction in which the money, property, insurance,

12  or services which are the subject or the transaction are primarily for personal,

13  family, or household purposes.  FDCPA § 1692a(5).

14  6.   The FDCPA defines "debt collector' as  any person who uses any instrumentality

15  of interstate commerce or the mails in any business the principal purpose of which

16  is the collection  of any debts, or who regularly collects or attempts to collect,

17  directly or indirectly, debts owed or due or asserted to be owed or due to another.

18  FDCPA § 1692a(6).

19  7.   Any debt collector who fails to comply with the provisions of the FDCPA is liable

20  for any actual damage sustained; statutory damages up to $1,000; attorney's fees

21  as determined by the Court and costs of the action. FDCPA § 1692k.

22  **III.  Jurisdiction**

23  8.   Jurisdiction of this Court, over this action and the parties herein, arises under 15

24  U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. §1337.  Venue lies in the Phoenix

25  Division of the District of Arizona as Plaintiff's claims arose from acts of the

1    Defendants perpetrated therein.

2                              **IV.  Parties**

3    9.    Plaintiff is an individual residing in Maricopa County, Arizona.

4    10.   Plaintiff is allegedly obligated to pay a consumer debt.

5    11.   Plaintiff is a "consumer" as defined by FDCPA § 1692a(3).

6    12.   Defendant Cavalry Investments, LLC (hereinafter "Cavalry") is a Delaware

7          limited liability company doing business within the State of Arizona.

8    13.   Cavalry regularly collects or attempts to collect debts owed or asserted to be owed

9          or due another.

10   14.   Cavalry regularly collects or attempts to collect debts which it has purchased after

11         default.

12   15.   Cavalry is a "debt collector" as defined by FDCPA § 1692a(6).

13   16.   Defendant Casebolt, Germaine & Schenk, PLC ("hereinafter "CGS") is an

14         Arizona professional limited liability company engaged in the practice of law.

15   17.   CGS employs attorneys to practice law under their firm name of Casebolt,

16         Germaine & Schenk, PLC.

17   18.   CGS is engaged in the business of collecting debts alleged to be due another.

18   19.   CGS is a "debt collector" as defined by FDCPA § 1692a(6).

19   20.   CGS is liable for the acts of its employees and agents within the scope of their

20         authority under the doctrine of respondent superior.

21   21.   CGS created the collection policies and procedures utilized by the attorneys and

22         other employees of the law firm.

23   22.   At all times relevant herein, CGS acted as an agent of Cavalry in the collection or

24         attempted collection of an alleged debt from Plaintiff.

25

- 3 -

1

**V.  Factual Allegations**

2    23.    In November 2002, Cavalry through its attorney Marvin J. Schenk filed suit

3            against Plaintiff in the South Phoenix Justice Court.

4    24.    In February 2003, Cavalry and Schenk obtained a judgment against Plaintiff in the

5            justice court action.

6    25.    Cavalry and Schenk transferred the case to Superior Court to pursue collection of

7            the judgment.

8    26.    In June 2003, Cavalry and Schenk filed for a writ of garnishment and served it on

9            Plaintiff's bank account.

10   27.    Once Plaintiff was served with notice of the writ of garnishment by her bank,

11           Plaintiff sought assistance from the Arizona Senior Citizens Law Project who

12           referred her to attorney Shane L. Harward.

13   28.    Plaintiff does not speak English.

14   29.    On June 30, 2003, Harward made a written appearance on behalf of Plaintiff in

15           the Superior Court action and served a copy on Cavalry's counsel, Schenk.

16   30.    Harward advised Cavalry and Schenk that there were no funds in Plaintiff's bank

17           account other than her social security benefits which were exempt.

18   31.    Harward also advised Cavalry and Schenk that Plaintiff's only source of income

19           was her Social Security benefits, that due to her age and health, she was not able

20           to be employed, and that she had no non-exempt assets to satisfy or partially

21           satisfy the judgment.

22   32.    Harward and Plaintiff appeared at the Garnishment hearing, but Cavalry or its

23           counsel did not appear cancelling the hearing without giving any notice to

24           Harward or Plaintiff.

25   33.    In August 2003, Cavalry and Schenk served a Notice of Debtor Examination

1    directly on Plaintiff, without providing a copy to counsel.

2    34.   Harward once again filed a notice of appearance in the superior court case on and

3          served a copy on Cavalry's counsel, Schenk.

4    35.   Harward reminded Cavalry's counsel at that time that he had been instructed to

5          cease and desist all further direct communications with Plaintiff concerning the

6          underlying debt.

7    36.   Harward and Plaintiff appeared at the debtor exam on August 21, 2003.

8    37.   During the debtor exam, Plaintiff explained that she was on a fixed income

9          consisting solely of her Social Security benefits, and that she had no non-exempt

10         assets.

11   38.   In January 2004, Cavalry and Schenk once again served a writ of garnishment on

12         Plaintiff's bank account.

13   39.   No notice or copy of the writ was sent to or served upon Plaintiff's counsel,

14         Harward.

15   40.   Plaintiff's bank charged her a $75.00 fee each time Cavalry and its attorney

16         served a garnishment on Plaintiff's bank account, even though there were no non-

17         exempt funds.

18   41.   On or about August 7, 2007, Cavalry and CGS filed another application for a writ

19         of garnishment against Plaintiff's bank account.

20   42.   Neither Cavalry nor CGS gave any notice of Plaintiff's counsel concerning the

21         writ of garnishment.

22   43.   Once again, Plaintiff's bank charged her a $75.00 fee to answer the writ filed by

23         Cavalry and CGS.

24   44.   At the time Cavalry and CGS filed its writ on Plaintiff's bank account, Plaintiff

25         had no non-exempt funds in her account.

- 5 -

45.   In March 2008, Cavalry and CGS filed a motion for a debtor's examination on Plaintiff.

46.   Cavalry's motion and order requiring appearance was served directly on Plaintiff with no notice given to Plaintiff's counsel of record in the underlying case.

47.   The Superior Court commissioner signed an order directing Plaintiff to appear for a debtor's exam on May 19, 2008.

48.   Plaintiff appeared at the hearing without her attorney who had not received any notice of the hearing.

49.   Cavalry's counsel examined Plaintiff directly without her counsel's presence even though he knew that she was represented by counsel.

50.   During the examination, Cavalry's counsel attempted to coerce Plaintiff into refinancing her home in order to off the judgment.

51.   At the time Defendants filed the garnishment in August 2007, they knew or should have known that Plaintiff was represented by counsel concerning the debt.

52.   At the time Defendants filed the garnishment in August 2007, they knew or should have known that Plaintiff's sole source of income was her Social Security benefits and that the contents of her bank account consisted solely of exempt property.

53.   At the time Defendants filed their motion for a debtor's examination of Plaintiff, they knew or should have known that Plaintiff was represented by counsel concerning the debt.

54.   At the time of the debtor's exam, Defendant knew or should have known that Plaintiff was represented by counsel concerning the debt.

55.   As a result of Defendants' outrageous actions as outlined above, Plaintiff has suffered damages including, but not limited to, emotional distress, family strife

1    and conflict, and anger.

2    56.   Defendants' actions taken here were intentional, willful, and in gross or reckless

3          disregard of Plaintiff's rights and part of their persistent and routine practice of

4          debt collection.

5    57.   In the alternative, Defendants' actions were negligent.

6                              **VI.  Causes of Action**

7                        **a.  Fair Debt Collection Practices Act**

8    58.   Plaintiff repeat, reallege, and incorporate by reference the foregoing paragraphs.

9    59.   Defendant's violations of the FDCPA include, but are not necessarily limited to,

10         15 U.S.C. §§ 1692c(a)(2), 1692d, 1692e, and 1692e(10).

11   60.   As a direct result and proximate cause of Defendants' actions in violation of the

12         FDCPA, Plaintiff has suffered actual damages.

13                           **VII.  Demand for Jury Trial**

14         Plaintiff hereby demands a jury trial on all issues so triable.

15                            **VIII.  Prayer for Relief**

16         WHEREFORE, Plaintiff requests that judgment be entered against Defendants

17   for:

18         a)    Statutory damages of $1,000 pursuant to §1692k;

19         b)    Actual damages in an amount to be determined by trial;

20         c)    Costs and reasonable attorney's fees pursuant to §1692k; and

21         d)    Such other relief as may be just and proper.

22   / / /

23   / / /

24

25

- 7 -

1

2          DATED   July 23, 2008  .

3                                          s/ Floyd W. Bybee
                                           Floyd W. Bybee, #012651
4                                          **Law Office of**
                                           **Floyd W. Bybee, PLLC**
5                                          4445 E. Holmes Ave., Suite 107
                                           Mesa, AZ 85206-5530
6                                          Office:  (480) 756-8822
                                           Fax: (480) 302-4186
7                                          floyd@bybeelaw.com

8                                          Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25